1741-53, 1741-54, and 1741-55, United States v. Toki et al. Mr. McMurray, please proceed when ready. Thank you. Can you hear me? Thank you, counsel. We're ready to hear from you. Yes, we can hear you just fine. Thank you. Thank you. May it please the court, this is Benji McMurray in Salt Lake City on behalf of all three petitioners. The government, in its recent filing, its 28J letter, made a critical concession. If Hobbs Act, I quote, if Hobbs Act can be committed by harming intangible property rather than by using physical force, then it cannot categorically be a crime of violence. This, your honors, is the very reason why the court must find in favor of the petitioners on Hobbs Act robbery this morning. Now, the government, rather than, the government does not refute in any way the broad number of authorities that we've presented to show that Hobbs Act robbery can be accomplished by threatening future harm to economic intangible property. They don't appear to have any dispute on the contours of Hobbs Act. The only reason they have for opposing our claim is they look back at this court's precedents, only some of this court's precedents, mind you, to argue that you have already decided in the government's favor. To explain why the government's analysis is so flawed, I'd like to start with a brief metaphor. Perhaps you've heard of the parable of the blind men and the elephant. In this parable, blind men discovered an elephant for the first time. One man feeling the ear thought he was feeling a fan. One man feeling the tail thought he felt the rope, so he was feeling a rope. One man feeling a leg thought he was brushing against the trunk of a tree. All of these men, none of these men, realized that the thing that they were looking at was an elephant. None of them could see the totality of the features of this beast that was before them. And that's very similar to what's happened here. It is true that this court, in prior decisions, has examined aspects of Hobbs Act robbery, and said that those acts, those aspects still fall within the force clause of 924C. For example, in Melgar Cabrera, it's true. This court said that the level of force required has to be violent. If it's a forcible Hobbs Act robbery, it has to be a violent degree of force. In Jefferson, this court said, well, the fact that the statute says, or injury, doesn't by itself mean that this injury contemplated is something different than an injury against a person. That look at the statutory language itself was like looking at a leg. But the thing that this court has never done is to look at the trunk of the elephant, which is what we've pointed this court to in this briefing. The fact that Hobbs Act robbery, by its terms, by its definition, encompasses even threats of harm to intangible property. Now, Jefferson actually gives us a good guide. Jefferson explains to us how this court ought to proceed. At page 1297 of Jefferson, this court says, looking only to the statute of conviction, the Hobbs Act robbery, we ask whether it can be violated without the use, attempted use, or threatened use of physical force. That's the question. It goes on and says, whether the statute reaches conduct not satisfying the elements clause depends upon whether each of the means in the second element, actual or threatened force or violence or fear and injury, can be satisfied without the use, threatened use, or attempted use of force. That's the question before this court. And the difference against Melgar Cabrera and Jefferson is that neither of these cases address the breadth that has been exposed here. Now, the government ignores the significance of this court's decision in O'Connor. O'Connor is a very important case because O'Connor deals with a related question and it studies the Hobbs Act very carefully. And as you know, O'Connor ultimately held that Hobbs Act robbery was broader than the force clause of the guidelines because it could be accomplished by threatening harm to O'Connor makes some important points that I think this court needs to keep in mind. At page 1152 of O'Connor, this court makes the point that the robbery, the California robbery statute at issue in O'Connor, could be achieved through threats to a person while a violation, oh excuse me, threats made to a person meet the generic definition of robbery, while a violation of a robbery crime based on threats to property corresponds to generic extortion. Now, what we see, and this is actually discussing the Castillo case, which goes back even further, what we see in O'Connor and Castillo is the close connection between robbery cases and extortion cases. And we see in O'Connor the recognition that robbery and extortion go hand in hand. And certain types of robbery actually look more like extortion, but we still call them robbery. In fact, the court goes on, page 1153, and rejects this argument for the government. The government contends that, so they talk about a threat, give me a million dollars, I won't hurt you, but I'll blow up an empty building you own. The government contends this scenario describes classic extortion and would be charged as such. Then this court says, importantly, even so, such conduct also satisfies the basic elements of Hobbs Act robbery, which is our inquiry under the categorical approach. That is, this court in O'Connor recognized that a lot of conduct that we would, we might describe colloquially as extortion, actually fits the definition of Hobbs Act robbery and can be charged as such. And it doesn't matter that the government may say, oh, we would never do it that way. O'Connor makes clear that the reach of the statute. Mr. McMurray, this is Jeff Holmes. Let me just get my procedural facts straight here. This argument that you're making at some length relates to an issue that you don't have a COA on. Am I right? Well, not exactly, Your Honor. Okay. Procedurally, so this court granted COA on the timeliness question. The government, in addressing the merits of the timeliness question, essentially conceded that the claim was timely. But if it wasn't timely, the court, well, what the government said is that, if anything, the case should be remanded on the timeliness question, and then the district court could do this analysis, and then one of us could appeal, and then this court could reach these questions. And so I guess- I thought there were only two statutes at play that for which there was a COA granted. The Arizona statute, the Utah statute. And if that's true, then why are we talking about Hobbs Act robbery? That's what I'm trying to understand. Well, the question that was granted COA on, one of the questions had to do with whether the due process challenge to the 924C convictions were timely. That's the question that was granted. And the 924C- The 924C- Sorry. I tried to intervene as well earlier. I thought that the two grants here were, number one, whether the challenge to the conviction based on the as you said, Utah and Arizona statutes are not categorical crimes of violence. So why don't you deal with number one first, which I think is also Judge Holmes' question? Sure. So with respect to the timeliness question, there can be no doubt that the due process claims were timely. Well, so we have now in Bowen, we have clearly indicated that with respect to 924C, the new rule was announced in Davis. Would you agree with that? Sure. Okay. So Don, aren't you supposed to file your petition within a year of Davis, not Johnson? Well, yes, but we did that. In fact, the statute of filing a due process claim, challenging 924C, won't expire until June. We filed this claim back in 2016. So I just don't see any argument that we're late. You filed a claim invoking Johnson, right? Well, our claim was a due process claim. Well, it's the case you rely on that provides the basis for determining whether it's timely, right? This court has said that, but the claim itself is still a due process claim. And the way I would encourage you to analyze this is to say that, look, we brought a due process claim in 2016. The problem at that point was, at least as this court has applied the statute of limitation case law, the problem in 2016 was that Johnson hadn't framed a doorway for this type of a claim. And so these petitioners filed before the doorway was there, but now Davis has framed the doorway and 2255 says that if you want to go that doorway, you have to file your due process claim within a year of Davis. In an exercise that, Judge Lucero, in an exercise of caution, it might be prudent to file a separate claim under directly invoking Davis, but then the question becomes for us that assuming you do so, wouldn't judicial economy argue in favor of consolidation and resolving these issues, as you argue? Yes, and it's not only we that argue that, the government also asks the court to take up the merits now. Do you need a separate petition under Davis in order to invoke the jurisdiction of Davis? I don't think so. I mean, I guess you guys could hold that, but it doesn't make a lot of sense to me. Our claim is based on the due process clause. Well, apart from that, the government can waive the timeliness issue, right? Yes, absolutely. And we make that point in our reply. So even if you're untimely, as long as the government's willing to waive it, we could breach the merits if we chose to do so. So then I think the next issue would be, this is Judge McHugh, switching to the COA with respect to the Arizona and the Utah crimes. Right, and unfortunately, I think we lose that one. So you're conceding on that? Yes, based on this court's case law. We, of course, disagree, and we don't abandon our argument, but we do recognize that this panel is bound based on man. Okay. All right. Well, if you concede the Arizona and Utah crimes, then as I said, as it relates to the Tobec robbery that you're talking about, where's the COA for that? Well, again, I think that the judicial economy encourages the court to accept the request of both parties to take the merits now. I think the government's brief essentially concedes or essentially waives any timeliness bar. Okay, well, let me stop for one second and let me just be clear. I thought that the government, what appeared to be a concession or waiver of timeliness would allow us to reach the Arizona and Utah crimes. Is that right? Well, I guess I'm not sure what you mean by reach the Utah and Arizona crimes. Well, to the extent that you have challenged whether it's categorically the crime of violence, the Arizona and Utah crimes, in order to reach the merits of that, we have to determine that your petition was timely, right? Your motion was timely, 2255. Right. Okay. Well, did your motion also relate to the Tobec robbery that you're talking about? Yes. Yes. I think my time is up, but the motion presents the... We requested relief under the arguing that Tobec robbery falls outside the force clause of 924C. And that was brought in our original petition. Could I make one quick comment about my concession I just made? What I was going to suggest is... Yes, you can. But what I was going to suggest is that we hear from the government and then grant you an additional two minutes, assuming your full time has expired. We'll determine that in a second. Let's go ahead and finish your point, and then let's hear from the government. Then we grant you at least two minutes further to proceed. Thank you. All of these predicate acts, they have various characteristics that could take them outside the force clause. The second COA grant had to do with the issue of whether a can see that under man, a reckless crime can be a predicate. And so we lose on the second question that's been granted. But that concession does not apply to all aspects of the due process issue with respect to Utah and Arizona, because Arizona robbery, for example, can be accomplished by additional granted time now. Fine. No, I'll come back. Thank you, Your Honor. Thank you. Good morning, Your Honors. This is Ryan Tenney. I just want to make sure that you can hear me before I start. I can hear you. Yes. Okay. May it please the court, I'm Ryan Tenney and I'm appearing on behalf of the United States. In light of the questioning, let me just start with the question, Judge Holmes, that you asked and that occupied the last few minutes, counsel's time. And that's the question of what the COA does and does not cover with respect to Hobbs Act robbery. Thank you. The premise of your question, I think is right. The current COA posture does not reach the Hobbs Act robbery issue. The two questions that this court granted a COA on, the first one has to do with the timeliness of a 924 C challenge that's based on Johnson, not Davis. And the second one has to do with Vicar, which is separate entirely. We, contrary to Mr. McMurray's claim, we did not concede in our supplemental brief that the petitions were timely. If you look at pages 17 to 19 of our brief, we affirmatively staked out the ground that they are not timely, that we, we argued that we cited case law to that effect. And we have this passage at the bottom of page 19, in which we make that point. And then we say, quote, in theory, this court could stop there. And that really would be the answer to the first question. But what we have then done is recognized, as has been done in other similar cases, that in light of subsequent case law, specifically Bowen and the other cases from the circuit, what would then happen is this would go back to the district court and they would be able to file a subsequent or successive petition. And so the district court would end up getting the Hobbs Act question anyway. And so while we have not in any way- Counsel, would there be, Judge Lucero, would there be some utility in having the district court rule on the Davis issue, the first instance? I don't, I don't think so, because it's, it's a legal question. The question of whether, Jefferson holds quite clearly that the question of whether your statute is a crime of violence is a legal question. This court is in just as good of a position as the district court to determine whether Hobbs Act robbery is categorically a crime of violence. But beyond that, and this, this really does fold into the merits of that argument, we don't think there'd be any utility to sending this back to the district court, because we believe that this court's precedents already conclusively answer that question. So the Hobbs Act, this is Judge Holmes, so the Hobbs Act robbery claim was folded into issue one. Is that what you're saying? It's not folded into the current COA grant, but we have asked you to affirm on an alternate ground, because that, that would spare the parties the necessity of going back to the district court to essentially argue a legal question that you could just as easily answer in the first instance. Okay, so just to get my ducks in the road here then, right now, the only thing that we actually have a COA on that we actually could reach are the questions of timeliness and the question of under the Vicar, whether the Utah and Arizona statute, is that right? Yes, that's correct. Okay, thank you. But, but, but then this is Judge McHugh. So you're asking us to expand the COA to pick up the Hobbs Act robbery issue? Yes, and that's consistent with the approach that this court has taken. We gave you that string side in our brief that this has been done in a large number of cases for, quite frankly, this exact reason. That if, in light of Bowen, I mean, we would not be asking you to do what we're asking you to do, but for Bowen, but Bowen sets the stage for district courts to then get successive petitions on this exact same question anyway. And so if that's going to be the case, and this court can affirm on an alternate ground, then it should, particularly where that alternate ground is so clearly settled by current case law. And, and that's what this court has done in a large number of other cases. And we think that that would be the most economical way to resolve this appeal as well. And settled by current case law to your benefit, I take it, is what your position is. Yes, that is our position. And if I may, oh please. This is Judge McHugh, and you're relying on Melgar Cabrera for that? Melgar Cabrera and Jefferson, both of which were published, and both of which held that as a categorical matter, Hobbs Act robbery satisfies the fourth clause. And let me just cut right to the responsive argument from the petitioners on this. When you have said in those past published cases that it is categorically a crime of violence, that necessarily rejects the argument that they're making now, because as they point out on page 21 of their opening brief, the nature of a categorical analysis is whether, quote, all the conduct prescribed by the statute, including the most innocent conduct, matches or is narrower than the crime of violence definition. So when you said in Melgar Cabrera and Jefferson that the fourth settlement in Hobbs Act robbery can be satisfied only by a violent force, that's patently inconsistent with the position that they're taking now, which is that it cannot. And so if you were to accept their argument, by definition, you wouldn't just be distinguishing Melgar Cabrera and Jefferson. You'd have to have the authority to overrule those cases. I mean, they come back in their reply brief, and they chide us a little bit for not engaging with them on the substance of this question. But I don't think we needed to, because we have two published cases from this court that say that it is categorically a crime of violence, which is fundamentally inconsistent with the argument they're taking. And that settles the question. Now, the more particular claim that they're making here is that because they've raised a new argument about whether it is categorically a crime of violence, it somehow confers upon this panel the authority to overrule those past cases. But that's not true. If that were true, that would severely undermine the law of stare decisis in this court. And you don't need to look any farther than Jefferson to see an example of why that's not true. In Jefferson, the defendant likewise raised a new argument. He made an elements versus means argument that had not been addressed in Melgar Cabrera. And this court acknowledged that, but it then said, quote, even if we were of a mind to, we are not at liberty to ignore Melgar Cabrera. It remains the law of this circuit, absent en banc reconsideration or a superseding contrary decision by the Supreme Court. That's from page 1296 of Jefferson. So this court confronts... So given your, Judge Lucero, given your argument, are you then saying that we should consider Davis issue at this point and rule in your favor? That is to say, cut through the procedural morass and get to the substance. Yes, that's the, that's the affirmal ultimate ground basis that we've offered for you. And then to make it clear, our point is that when you cut through the procedural morass, as you put it, Judge Lucero, what you then run into is Melgar Cabrera and Jefferson, both of which hold as precedent that Hobbs Act robbery is categorically a crime of violence because those are both published cases. And because that is completely inconsistent with the approach that the petitioners are taking, you're bound by those decisions, absent either a superseding contrary decision from the Supreme Court or en banc reconsideration. So that settles the question, the fact that they have raised new arguments. And if you think about it in stare decisis terms, a litigant could always come forward with a new argument in a new case. We follow you. We follow you on that point. Mr. Taney, this is Judge Holmes. Just to clarify then, do you understand in light of the concession that took place in defense counsel's argument about the Arizona and Utah statute, that if we were to cut through the Davis issue and reach the Hobbs Act robbery, that the Hobbs Act robbery is really the only litigated issue here? That's how I understood his concession to be, yes. Okay. Mr. McMurray may correct on that, but in light of what he said during his opening argument, I think that's correct. Okay. Well, don't we have some issues that we granted COA on that only touch on one of the defendants with respect to withdraw the guilty plea? Yeah. Yeah. I apologize. My answer to Judge Holmes, that was incorrect. It was the district court's COA, Judge McHugh's. It was not your subsequent COA. The district court earlier did grant a COA on the ineffective assistance claim. Okay. Yeah. I got that. But as it relates to this whole crime of violence business, the only thing that would be left would be the Hobbs Act robbery. Right. If you'd like me to turn to the ineffective assistance claim, I'd be happy to. I think it would be helpful. Yes. Okay. Let me turn to the ineffective assistance claims. He's raised a number of ineffective assistance claims. And in brief, our answer is as follows. Our broad answer is that we think he's inadequately briefed his ineffective assistance claims. In his opening brief, there's three pages devoted to these issues. Two of them are procedural because he did not include those facts in a statement. Counsel, if I could be more specific, I think it would be particularly helpful if you addressed the Kamahalei claim. Yes. Kamahalei is the only one who has raised the ineffective assistance claims. So these are specific as to him. Our broad point is they're inadequately briefed. In the opening brief, there's only one legal citation. It's the Lafleur. And there's not even a pinpoint citation. We really found ourselves in a posture of trying to construct his argument. On that point, Kamahalei, the question I had was whether at the time of the entry of the initial plea, there's anything in the record that indicates that Kamahalei was advised as to the consequence of filing a guilty or a not guilty plea. Do we have any information on that before us? Yes, you do. It's volume four of the record at page 631. This is a portion of the written plea affidavit that he had filed in conjunction with the plea, which, as you'll recall, was just a week before the plea withdrawal process. And this is what Mr. Kamahalei agreed to. He ends up signing the statement. But on page 631, he says, quote, my decision to enter this plea was made after full and careful thought, with the advice of counsel, and with a full understanding of my rights, facts, and circumstances of the case, and the consequences of the plea. And at the time he sought to change his plea in the five-minute colloquy that he did have with his lawyer, he claims that his lawyer called him the dumbest guy around. Those are my words, not necessarily his. Is there anything in the record that tells us why he was so characterized? Not directly, but I think if you sort of look at the full context, I mean, just even accepting that is true. We don't concede that she actually said that. But even for these purposes, accepting that she did say that, what it appears by his own account to be part of is their discussion about whether he should, in fact, move to withdraw his plea. And when you then look to the statement that she makes at the plea withdrawal hearing, you see what her concerns are. She puts this on the record. This is volume 5 of the record, page 5. She says, quote, I wanted to make sure that it was on the record that this was against legal advice. Just because of the time he's facing, my concerns about the evidence at trial, my recommendation is that he let the police stand, and he still wishes to have it withdrawn. And so she makes it clear at this hearing that she's telling him, don't do this. You're going to get convicted, and you're facing a lot of time. And yet he then proceeds to withdraw his plea anyway. And to the extent that we're accepting this sort of claim that she called him dumb, the context is that that's why she allegedly said this, is because she thought this was a dumb decision, and she's explaining the reasons why. And that's the record that refutes that claim. The part of it is an effective assistance claim, that I think to the extent that there's any sort of legs to it, it would be about the mandatory minimum aspect. And I wanted to address that just real briefly, if I could. Well, very briefly, please. Right. If I'm correct, I think I've got two minutes left, so I'll make it work. He has to show prejudice under the LaFleur Frye standard, meaning that he has to show that there's a reasonable probability that the outcome of the plea process would have been different if he had gotten the effective advice. The problem he has on this record is that the record doesn't support his claim that his decision to withdraw his plea had anything to do with his sentencing exposure. He's informed of the mandatory minimums at the arraignment, and in his own 2255 affidavit, he alleges that counsel did tell him about the mandatory minimums earlier in the process, and according to him, she gave him inconsistent numbers. Well, what that says is that he knew that they existed, he knew that he didn't know what they were, and yet he still decides to withdraw his plea anyway. So that begs the question, why? And he answers that question in his affidavit. He says that the reason he moved to withdraw his plea is because one of his fellow gang members asked him to so that they could go to trial and help each other at trial. And so if we know on this record, by his own account, that he knows that there are mandatory minimums, he knows that he doesn't know what they are, he knows from the arraignment what they are. In the original plea affidavit, he acknowledges that he knows he's facing up to a life sentence, and then at the plea withdrawal hearing, defense counsel says she's telling him to do this in part, quote, because of the time he's facing. If you put all of that together, and then he still moves to withdraw his plea, there's no reasonable probability that the sentencing exposure was what was driving his thinking. And so that would be our response to that claim. But then on a broader level, we just don't think he adequately briefed this in his opening brief to begin with. So that would be the arching reason. I'd be happy to address any questions about this or any other issues. Let me ask, there's a reference to counsel providing, quote, unquote, no advice to him in connection with that withdrawal. How do you take the statements that were made in open court, you know, relative to any sort of private conversation that he would have? Do you think that that would in itself qualify as an advisement? This is Judge Holmes. I'm sorry for not introducing myself. Right. My time is going to expire in about four seconds. So may I answer? Judge LaSera, is it okay? Judge LaSera? Oh, excuse me. I had said, go ahead, please. I'm sorry. Oh, I'm sorry. I missed that. Okay. The answer to your question, Judge Holmes, apologies. I think what was driving his claim on that respect, I think he's taking a very to the staging aspect of an ineffective case. What I understand him to be saying is she had to give me this, all of this advice in the plea withdrawal stage. And so he's really trying to construct something of a vacuum and trying to exclude from your analysis what happened in the other stages. But that's not the way that deficient performance claims work. Strickland talks about considering all of the circumstances of a claim. This court has case law that says you look at all the circumstances. And that's particularly appropriate here, Judge Holmes, this really is the answer to your question, where the plea process itself happens just a week earlier. I don't see anything in the Strickland line of cases that would allow you to so narrowly focus on what happened on a particular day or a particular hearing and not also account for what happened a week earlier. And so I think that answers both what he's thinking and what our response to that is. Thank you, counsel. Thank you, counsel. Thank you, Your Honors. Judges, the appellant's attorney is out of time. Yes. With Judge McHugh and Judge Holmes' consent, I'll grant an additional two minutes. Of course. Yes, I agree. Thank you, counsel. We're ready. Thank you, Your Honors. I want to start with the ineffective assistance of counsel claim right now. The government criticizes the sparse briefing. Let me just note that this was three consolidated appeals with numerous issues, and it was difficult to cover the ground. Nevertheless, this really is a factual issue. And Mr. Kamahele in his pro se filing, no less, created a factual dispute. And I think Judge Holmes touched on it. Mr. Kamahele said that there was no legal advice given with respect to the merits of this decision. Instead, it was... Well, counsel, on that point, we do have to consider the fact that he was advised of the consequences of a guilty plea necessarily subsuming the very issue that you're addressing here just a few days later. I mean, there was very little time left between the guilty plea, the motion for change of plea, and the albeit short five-minute colloquy with his lawyer. I agree that that has to be accounted. The problem, though, is that the district court didn't account for Mr. Kamahele's facts. And in the face of his claim that he received no advice, Mr. Tenney asks why we focus so much on that day. That's the day that the decision was made. When he made that... When he went into court and said, yes, I want to withdraw my plea, I understand what's happening, the only advice that was given was hurriedly given in a derogatory fashion in a lockup before the jail, and he gets a hearing. There's a case that came out late last year, United States v. Herring. It's 935S 3-1102. I'll submit a 28-J letter with this case. But it stands for the idea that when a petitioner makes this type of factual allegation, that a hearing is required, and that's what the district court recognized. Mr. McMurray, I know you had a lot of issues, but the point is, critically, for me, I didn't see any argument about prejudice expressly made in your opening brief with respect to this issue. And I think that's a significant failing unless I'm missing it. Where did you make an argument? Well, the prejudice was... And again, I apologize if it was not clear or amply stated, but the prejudice is that if he had understood really what was going to happen at trial, if his attorney had taken the time to explain, you're going to lose and you're going to face these mandatory penalties, and if she had actually done that, he would not have withdrawn his plea. What he... The basis that Mr. Tenney pointed to was ridiculous, that he would do this because somebody in the jail told him to do that. He had the right to an attorney helping him through this, and that's where it went wrong. Had he had an attorney, he wouldn't have withdrawn his plea. Thank you, counsel. Judge Holmes? Nothing further. Thank you. All right. Judge McHugh? Nothing further. All right. Hearing nothing, then the case is submitted. Counselor Hughes?